**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly A. O'Connor,<br><br>          Plaintiff,<br><br>v.<br><br>Scottsdale Healthcare Corp; et al.,<br><br>          Defendants. | No. CV11-2264-PHX-JAT<br><br>**ORDER** |

Currently pending before the Court is Defendants' Motion to Dismiss (Doc. 9). The Court now rules on the Motion.

**I.     BACKGROUND**

The following are the facts alleged in the Complaint, which the Court must presume true for purposes of resolving the Motion to Dismiss. Plaintiff Kimberly O'Connor went to Scottsdale Healthcare Shea Medical Center on November 18, 2009 to visit her mother, who had been admitted to the hospital for atrial fibrillation. Plaintiff brought her service dog,[1] Peaches, with her. Peaches was on a leash and wearing a collar and a blue cape with two patches reading "Service Dog."

Plaintiff and Peaches entered the hospital from a side entrance, south of the

---

[1] The Code of Federal Regulations defines a service animal as "any guide dog, signal dog, or other animal individually trained to do work or perform tasks for the benefit of an individual with a disability . . .." 28 C.F.R. §36.104. Plaintiff has not alleged that Peaches was individually trained to do work or perform tasks for Plaintiff, but the Court will assume Peaches is a service animal for purposes of this Order.

emergency entrance. As they were walking in the corridor toward the north elevator, they passed a security guard. When Plaintiff had gotten about ten feet beyond the security guard, he stopped her.

The security guard asked Plaintiff if she had registered her dog. Plaintiff politely informed the security guard that she had not and would not register Peaches because it was not necessary for her to do so. The security guard reasserted that Plaintiff needed to register Peaches and asked Plaintiff when Peaches was last groomed and vaccinated. Plaintiff told the security guard that her dog's vaccinations were current.

The security guard continued to insist that Plaintiff register her dog. Plaintiff told the guard that his demands were improper and illegal. The guard told her that he was doing nothing illegal and that the registration of dogs was the policy of the Scottsdale Healthcare legal department. Plaintiff asked to speak with a member of the legal department, but no member was present at the Shea campus.

Plaintiff then withdrew a publication distributed by the Disability Rights Task Force of the US Department of Justice and the National Association of Attorneys General from the pocket of the dog's cape. The publication set forth the most commonly asked questions regarding service dogs' access to public accommodations. Plaintiff read to the guard a section from the publication discussing a disabled person's right to bring his or her service animal with him to public accommodations.

The security guard nonetheless continued to ask Plaintiff to register her dog. He became increasingly irritated with Plaintiff's refusal to comply with his orders and told Plaintiff that he could call the police and have her arrested for trespassing if she did not leave. Plaintiff told the guard that she knew the hospital policy was wrong because she was an attorney and had read the applicable disability laws.

When Plaintiff continued to stand her ground, the security guard asked her to leave by the door through which she had entered and to wait outside while he got his supervisor. The guard then escorted Plaintiff out of the hospital. The guard asked her to wait outside the hospital security office while he spoke with his supervisor.

The original security guard re-joined Plaintiff with two more security guards and a man who identified himself as the head of security for Scottsdale Healthcare. The head of security asked Plaintiff if she was disabled and if her dog was a service dog. When she answered yes to both questions, the head of security immediately allowed Plaintiff to enter the hospital with Peaches and without registering the dog.

When Plaintiff got to her mother's hospital room, Plaintiff was extremely agitated, which her mother noted. Within a few minutes, Plaintiff noticed that her mother was gazing out of the door of her room, not looking at Plaintiff. When Plaintiff asked her mother why she was staring out the door, her mother was minimally responsive and suddenly went blind in one eye. Tests later demonstrated that Plaintiff's mother had had a stroke.

Plaintiff returned to the hospital in the afternoon of November 18 and on several days thereafter until her mother was transferred. Although Plaintiff claims she felt afraid a security guard would confront her again about Peaches, none ever did. She was never again stopped from entering the hospital or asked to register Peaches.

On November 21, 2009, Plaintiff's mother indicated to Plaintiff that she was having pain in her lower left quadrant. Unsure about her mother's ability to communicate this symptom to the staff, Plaintiff told a nurse that her mother was complaining of pain in her lower left quadrant. Plaintiff's mother continued to have pain over the next few days.

On November 23, 2009, Plaintiff's mother was transferred to a long term care nursing facility. Plaintiff's mother died there on December 22, 2009 from acute septic shock as a result of Clostridium Difficile colitis. Plaintiff believes her mother contracted Clostridium Difficile colitis at Scottsdale Health Care Shea Medical Center.

Plaintiff filed her Complaint in this Court against the hospital and related entities on November 17, 2011. She alleges one federal cause of action for violation of the Americans with Disabilities Act and seven state law claims for: violation of the Arizonans with Disabilities Act; intentional infliction of emotional distress; negligent

infliction of emotional distress; assault; false imprisonment; wrongful death of her mother; and negligence. Plaintiff seeks monetary damages and injunctive relief.

Defendants filed the pending Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on February 22, 2012. (Doc. 9.) Defendants argue that Plaintiff failed to plead sufficient facts to entitle her to the remedies she seeks. In her Response, Plaintiff claims that she alleged facts sufficient to state a claim for all of her causes of action, but seeks leave to amend if the Court finds she has failed to state a claim.

## II.     AMERICANS WITH DISABILITIES ACT

Defendants move pursuant to Rule 12(b)(6) to dismiss Plaintiff's Americans with Disabilities Act (ADA) Count for failure to state a claim. The Court, however, will not recite the Rule 12(b)(6) dismissal standard because the Court is dismissing the ADA claim for lack of standing.

Federal courts must sua sponte examine jurisdictional issues such as standing. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011)("Although Pier One failed to move to dismiss under Federal Rule of Civil Procedure 12(b)(1), federal courts are required sua sponte to examine jurisdictional issues such as standing.")(internal quotations omitted). Article III standing is not subject to waiver. *Id*. If the Court determines at any time that it lacks jurisdiction, the Court must dismiss the action. *Id*. (internal quotations omitted).

A disabled person claiming discrimination under the ADA must satisfy the case and controversy requirement of Article III by demonstrating her standing at each stage of the litigation. *Id*. To establish standing, Plaintiff must demonstrate that she suffered an injury-in-fact, that the injury is traceable to the hospital's actions, and that the injury can be redressed by a favorable decision. *Id*. In addition, to establish standing for injunctive relief, which is the only relief available to private plaintiffs under Title III of the ADA, Plaintiff must demonstrate a "real and immediate threat of repeated injury" in the future. *Id*. (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). The Court's standing analysis must focus on the nature and source of Plaintiff's claim, discrimination under the

ADA.

Title III of the ADA provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." *US v. AMC Entertainment, Inc.*, 549 F.3d 760, 763 (9th Cir. 2008)(citing 42 U.S.C. §12182(a)). "Discrimination" includes, among other things, "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services . . . or accommodations to individuals with disabilities." *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 843 (9th Cir. 2004)(citing 42 U.S.C. §12182(b)(2)(A)(ii)). The Department of Justice has issued regulations providing that a public accommodation generally must modify polices, practices, or procedures to permit the use of a service animal by a disabled individual. *Id.* (citing 28 C.F.R. §36.302(c)(1)).

To prevail on an ADA Title III discrimination claim, a plaintiff must demonstrate that: 1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and 3) she was denied public accommodations by the defendant because of her disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007)(citing 42 U.S.C. §12182). Plaintiff has no trouble with the first two elements of her claim. The Court assumes, based on her allegations, that Plaintiff is disabled within the meaning of the ADA, and Defendants do not dispute that the hospital is a privately-owned facility open to the public. But Plaintiff's allegations do not demonstrate that she was denied public accommodations.

Although Plaintiff was momentarily delayed from visiting her mother in the hospital because of her interaction with the security guard, ultimately, she was allowed to enter the hospital with Peaches without registering the dog. The Court supposes that some prolonged waits for accommodation might amount to constructive denial of accommodation. But the Court finds that the minimal delay Plaintiff encountered at the hospital did not constitute constructive denial of a public accommodation.

The Ninth Circuit Court of Appeals decision in *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832 (9th Cir. 2007) supports the Court's finding. The plaintiff in *Skaff* was a paraplegic who had to use a wheelchair for mobility. *Id*. at 835. About two weeks before his visit to the defendant hotel, the plaintiff made a reservation and specifically requested a wheelchair-accessible room with a roll-in shower. *Id*. at 835-36.

When he checked into the hotel, the plaintiff reiterated his need for an accessible room with a roll-in shower, but the staff assigned him to a room with a bath tub. *Id*. at 836. The plaintiff immediately told the hotel staff about the problem, and, after an hour delay, the hotel provided him with a room that had a roll-in shower. *Id*. But the new room's shower did not have a wall-hung shower chair, which prevented the plaintiff from using the shower. *Id*. The plaintiff reported the problem to the staff and asked if the hotel had a portable shower chair he could use. *Id*. The hotel staff eventually found a portable shower chair he could use, and the plaintiff was able to take a shower the following morning. *Id*. In addition to the problems with the shower, the plaintiff generally alleged that during his stay at the hotel, he encountered numerous barriers to disabled access including path of travel, guestroom, bathroom, telephone, elevator and signage barriers to access. *Id*.

The *Skaff* plaintiff sued for injunctive relief under Title III of the ADA and for damages under California's state civil rights laws. *Id*. The district court found that the plaintiff did not have standing to sue under the ADA. The Ninth Circuit Court of Appeals reversed the district court with regard to the allegations of barriers to travel, but affirmed the district court's conclusion that the problems with the shower did not allege an injury in fact sufficient to confer standing under the ADA. *Id*. at 839-40.

The court of appeals agreed that the initial mistake of assigning a room without a roll-in shower did not cause the plaintiff any cognizable damage because the hotel corrected that mistake within an hour by reassigning the plaintiff to a room with a roll-in shower. *Id*. at 839. The appeals court further found that the initial absence of a shower chair was promptly corrected and that the plaintiff had a shower he could use by the next

morning. *Id*. In reaching its conclusion that the plaintiff suffered no cognizable injury concerning the shower problems, the appeals court stated:

> The ancient maxims of *de minimis non curat lex* and *lex non curat de minimis* teach that the law cares not about trifles. This principle frequently has been followed by the Supreme Court. The *mere delay* during correction of the problem with the shower is too trifling of an injury to support constitutional standing.

*Id*. at 839-40 (internal citations omitted)(emphasis added); *see also Anderson v. Ross Stores, Inc.*, 2000 WL 1585269 *10 (N.D. Cal. October 10, 2000)(forty-five to sixty minute delay in providing an accommodation at retail store did not constitute a denial of access to accommodation).

Plaintiff here also suffered only a brief delay before the hospital allowed her to enter without registering Peaches, her service dog. Although Plaintiff obviously found her interaction with the security guard very unpleasant, the short delay caused by the encounter was too minor an injury to confer standing under the ADA.

Further, even if the brief delay somehow did constitute a denial of accommodation, the Court finds that Plaintiff does not have standing to sue for injunctive relief. Monetary damages are not available in private Title III ADA suits. *Molski*, 481 F.3d at 730. Plaintiff therefore can seek only injunctive remedies for her ADA claim.

To establish standing to pursue injunctive relief, Plaintiff must demonstrate a "real and immediate threat of repeated injury" in the future. *Chapman*, 631 F.3d at 946 (internal citations omitted). Moreover, it is the reality of the threat of repeated injury that is relevant to standing, not Plaintiff's subjective apprehensions. *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983).

According to her own Complaint, Plaintiff returned to the hospital without incident on several occasions during the days after the encounter with the security guard. She never had another issue. Any subjective fears about returning to the hospital are belied by the objective reality. Plaintiff's unsubstantiated, subjective fear that she might,

at some point in the future, have another problem bringing Peaches to Defendant hospital does not confer standing to pursue injunctive relief.

Because Plaintiff has not suffered an injury-in-fact under the ADA and because her own allegations demonstrate that there is no real and immediate threat that she will again be asked to register Peaches before entering Defendant hospital, Plaintiff lacks standing to bring an ADA claim. Plaintiff's lack of Article III standing deprives this Court of jurisdiction to entertain her ADA claim. The Court therefore must dismiss the ADA claim.

Plaintiff seeks leave to amend her Complaint if the Court finds her allegations insufficient. But the allegation of additional facts consistent with the facts alleged in the Complaint - she was allowed to enter the hospital immediately after speaking with the supervisor and she returned to the hospital several days afterward with no problem - would do nothing to cure Plaintiff's lack of standing. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)(A court may dismiss a complaint if it is clear that relief could not be granted under any facts consistent with the allegations). The Court does not have to give leave to amend if amendment would be futile. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). The Court therefore denies Plaintiff's request to amend.

### III. STATE LAW CLAIMS

The basis for subject matter jurisdiction in this case is federal question jurisdiction. Plaintiff's ADA claim is the only federal claim alleged in the Complaint, and the Court has dismissed that claim without leave to amend. When the Court dismisses the sole federal claim in a case and only state law claims remain, the Court should decline jurisdiction over the state claims and dismiss them without prejudice. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law

1  claims." *Id.* at 350 n.7.  Given the early stage of the proceedings in this litigation, the
2  Court finds no reason to exercise its discretion to decide the remaining state law claims.
3  The Court therefore dismisses the state law claims without prejudice.
4  　　　Accordingly,
5  　　　**IT IS ORDERED** Granting Defendants' Motion to Dismiss (Doc. 9).  The Court
6  dismisses the ADA claim for lack of jurisdiction and dismisses the remaining state law
7  claims without prejudice.  This case is dismissed in its entirety.
8  　　　Dated this 15th day of May, 2012.

　　　　　　　　　　　　　　　　James A. Teilborg
　　　　　　　　　　　　　　　　United States District Judge